**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Yanez-Palmer,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-19-05865-PHX-DJH<br><br>**ORDER** |

At issue is the denial of Plaintiff Mary Yanez-Palmer's Application for Disability Insurance benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant SSA Commissioner's Answering Brief and Motion to Remand (Doc. 13, "Def. Br."), and Plaintiff's Reply (Doc. 16, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, "R."), and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 27–47) as upheld by the Appeals Council (R. at 1–6). The Court orders that this case be remanded for further proceedings consistent with this Order.

**I.    BACKGROUND**

Plaintiff filed her Application for Disability Insurance benefits on June 24, 2015, alleging disability beginning March 3, 2015. (*Id.* at 30.) Her claim was denied initially on February 5, 2016, and was denied on reconsideration on November 22, 2016. (*Id.*) On

October 3, 2018, Plaintiff appeared and testified at a hearing before the ALJ. (*Id.*) On November 28, 2018, the ALJ denied Plaintiff's claim, and on October 24, 2019, the Appeals Council denied her Request for Review. (*Id.* at 1–6, 27–47.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: history of traumatic subdural hemorrhage and neurocognitive disorder. (*Id.* at 33.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (*Id.* at 41.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 34.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: the claimant is able to stand and/or walk for six hours in an eight-hour day; she is able to sit for six hours in an eight-hour day; she is frequently able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she is occasionally able to climb ladders, rope, and scaffolds; she must avoid concentrated exposure to industrial hazards; she is occasionally able to reach, handle, and finger with the left upper extremity; she is capable of performing no more than simple, repetitive tasks; and she is not able to perform a job requiring production quotas.

(*Id.* at 36.) Accordingly, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 40.) Specifically, the ALJ found that she could perform the representative occupations of Usher, of which there are 5,300 such jobs in the national economy, and Investigator, Dealer Accounts ("Investigator"), of which there are approximately 6,500 such jobs in the national economy. (*Id.* at 41.) Additionally, the vocational expert (VE) at Plaintiff's hearing testified that if Plaintiff had the same limitations as the ALJ found but was limited to sedentary work, she

would be able to perform only one job—Callout Operator—of which there are 5,900 jobs in the national economy. (*Id.* at 79.)

## II.     LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she

determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two primary arguments. First, Plaintiff argues that the ALJ incorrectly calculated her RFC because the ALJ improperly evaluated her symptom testimony and the medical opinion evidence.[1] (Pl. Br. 9–20.) Second, Plaintiff argues that Defendant failed to meet his burden to establish that Plaintiff can perform substantial gainful employment that exists in significant numbers in the national economy.[2] (*Id*. at 20–23.) Plaintiff argues this second point in two distinct ways: (1) the ALJ found that there are only 11,800 jobs in the national economy that Plaintiff can perform and that total is not significant; and/or (2) Plaintiff's limitation to simple, repetitive tasks precludes her performance of the Investigator job the ALJ found she can perform so there are actually only 5,300 jobs that Plaintiff can perform and that total is not significant. (*Id.*)

The Court disagrees that substantial evidence does not support the ALJ's RFC calculation, but agrees that Defendant failed to establish that Plaintiff can perform substantial gainful employment that exists in significant numbers in the national economy. Taking Plaintiff's arguments in order, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's symptom testimony and the opinions of Dr. William Allison and Dr. Byron Willis. The ALJ appropriately rejected Plaintiff's symptom testimony based on her improvement with treatment and her failure to appear for consultative examinations without good reason. Furthermore, the ALJ correctly evaluated Dr. Allison's opinion and appropriately rejected Dr. Willis's opinions based on their vagueness.

However, the Court finds that a new hearing is appropriate for the ALJ to determine which jobs Plaintiff can perform, how many of those jobs exist in the national economy,

---

[1] Defendant does not concede this issue. (Def. Br. at 13.)

[2] Defendant concedes this issue. (Def. Br. at 10.)

and whether they exist in significant numbers. On the current record, the Court concludes that substantial evidence does not support the ALJ's finding that Plaintiff can perform substantial gainful employment that exists in significant numbers in the national economy. Still, the record does not presently establish that Plaintiff *cannot* perform jobs that exist in significant numbers in the national economy. It is ambiguous whether Plaintiff can perform the jobs the ALJ and VE found she can perform. Before the Court can evaluate whether substantial evidence supports the ALJ's finding that Plaintiff can perform jobs that exists in a significant number in the national economy, the Court must know which jobs Plaintiff can actually perform and how many of those jobs exist. This factual issue is reserved for the ALJ.

### A.   Substantial evidence supports the ALJ's calculation of Plaintiff's RFC.

The Court rejects Plaintiff's challenges to the ALJ's evaluation of her symptom testimony and the opinions of Dr. Allison, her examining physician, and Dr. Willis, her treating physician. The ALJ appropriately discounted Plaintiff's symptom testimony based on her improvement with treatment and her failure to appear for consultative examinations. Next, the ALJ appropriately evaluated Dr. Allison's opinion even without adopting the opinion wholesale. Finally, the ALJ correctly rejected Dr. Willis's opinions because they were vague.

#### 1.   The ALJ correctly rejected Plaintiff's symptom testimony based on her improvement with treatment and her failure to appear for consultative examinations.

The ALJ provided three reasons for rejecting Plaintiff's symptom testimony. First the ALJ found that Plaintiff's impairments and symptoms improved with time and treatment. (R. at 38.) Next, the ALJ found that Plaintiff pursued only conservative treatment since she purportedly did not follow-up with a neurologist. (*Id.*) Finally, the ALJ found that Plaintiff's repeated failures to appear for a consultative examination without good reason is a basis to discount her allegations. (*Id.*)

. . . .

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Substantial evidence supports the ALJ's finding that Plaintiff improved with treatment. This rationale justifies the ALJ's discounting of Plaintiff's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Though Plaintiff cites some evidence that she had persistent problems despite her treatment, ultimately, substantial evidence is a low threshold and the ALJ supported his reasoning with substantial evidence. (Pl. Br. at 12.) For example, the ALJ cites records indicating that Plaintiff did well following discharge from surgery, she was able to complete all functional activities of daily living, and she had normal range of motion and strength in her extremities. (R. at 474–75, 676–80, 877–78.) Though the evidence points both ways on this issue, the ALJ's interpretation is a reasonable one, and thus, is entitled to deference. *See Thomas*, 278 F.3d at 954.

Similarly, the ALJ also appropriately relied on Plaintiff's repeated no-shows for consultative examinations in rejecting her testimony. 20 C.F.R. § 404.1518 ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a

consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind."). The ALJ noted that Plaintiff missed scheduled consultative examinations in November 2015, December 2015, and October 2016. (R. at 38, 881, 890, 925.) Plaintiff argues that she missed the appointments for good reason: she thought they were optometry examinations, but her optometry issues were already being treated by her own providers. (Pl. Br. at 13–14; R. at 67–68.) Thus, Plaintiff argues her absences were not evidence that she was unwilling to cooperate with the adjudication of her claim. (Pl. Br. at 14.) Nevertheless, substantial evidence supports the ALJ's finding that Plaintiff missed the appointments without good reason. Here, the ALJ relied on a report that Plaintiff missed one of the appointments because she went to the wrong address, which contradicts her explanation for her absences. (R. at 38, 67–68, 881.) Thus, the ALJ appropriately found that Plaintiff missed the appointments without good reason. (Pl. Br. at 13–14.) Regardless of whether Plaintiff thought she did not need to attend the consultations, substantial evidence supports the ALJ's finding that she did not have good reason for her absences. Accordingly, her testimony was properly rejected on this basis.

Since the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony and those reasons are supported by substantial evidence, he did not err by rejecting Plaintiff's testimony.[3]

### 2. Substantial evidence supports the ALJ's evaluation of Drs. Allison and Willis's opinions.

Dr. Allison submitted an opinion regarding Plaintiff's functional limitations that was based on his consultative examination of Plaintiff. (R. at 882–89.) Regarding Plaintiff's ability to adapt to change, Dr. Allison found that "[s]he would have moderate difficulty coping with changes in work procedures. She would have significant difficulty

---

[3] Though the ALJ erroneously found that Plaintiff did not follow-up with a neurologist, that error was harmless because the ALJ provided other valid reasons for rejecting her testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (defining harmless error as error that is inconsequential to the ALJ's nondisability determination).

coping with more stressful working conditions or demands for increased productivity." (*Id.* at 888.) The ALJ gave great weight to Dr. Allison's opinion. (*Id.* at 39.) Nevertheless, Plaintiff argues that the RFC did not "encompass all of Dr. Allison's findings." (Pl. Br. at 17.) Plaintiff's specific argument is unclear, though she apparently argues that because all jobs are stressful, the ALJ did not adequately account for the above limitations by limiting Plaintiff to no more than simple, repetitive tasks and no production quotas. (Pl. Br. at 17.)

Plaintiff's treating physician, Dr. Willis, submitted four letters within two months regarding Plaintiff's functional ability. (R. at 874, 875, 876, 880.) The August 2015 letter states that Plaintiff "may return to sedentary work, effective immediately." (*Id.* at 874.) The September 3, 2015 letter states she "may return to sedentary work as tolerated, effective immediately on a part time basis only." (*Id.* at 875.) The September 14, 2015 letter states, "[w]ork status has been re-evaluated and it has been determined that patient remain on a off work status until further notice." (*Id.* at 876.) Finally, the October 8, 2015 letter states, "Patient may not return to work due to chronic pain and nerve damage due to stroke. Patient has an upcoming appointment in December and we may re-evaluate her work status at that point." (*Id.* at 880.) The ALJ rejected these opinions because they: (1) are vague; (2) are contradicted by the medical evidence; (3) appear to "accommodate" Plaintiff; and (4) opine to an issue—disability— reserved to the ALJ. (*Id.* at 38–39.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti*, 533 F.3d at 1041. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion "is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the

record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

First, the ALJ correctly evaluated Dr. Allison's opinion and appropriately accounted for all of his opined-to limitations in Plaintiff's RFC. Significantly, Plaintiff does not identify any specific limitation that was included in Dr. Allison's opinion that the ALJ did not include in Plaintiff's RFC. (Pl. Br. at 17.) Instead, Dr. Allison noted that Plaintiff would have significant difficulty adapting to changes in the workplace; accordingly, substantial evidence supports the ALJ's finding that she is limited to simple, repetitive tasks and no production quotas. (R. at 36, 888.) Ultimately, it is the ALJ's duty to evaluate the medical evidence, resolve conflicts and ambiguities in the record and determine a claimant's RFC. *See Tommasetti*, 533 F.3d at 1041. Further, the RFC need not match any particular medical source opinion since it is a legal determination. 20 C.F.R. §§ 404.1527(d)(2), 404.1545, 404.1546(c).

Next, regardless of the ALJ's other offered rationales, the ALJ appropriately rejected Dr. Willis's opinions because they are vague. ALJs may consider the level of explanation in evaluating the weight of medical opinions. 20 C.F.R. § 404.1527(c)(3). Here, even if Dr. Willis's letters are not viewed as opining to the ultimate disability issue reserved to the ALJ, substantial evidence supports the ALJ's view that the letters are vague. Each letter consists of only a few sentences and focuses on whether Plaintiff can sustain work, but Dr. Willis does not elaborate on Plaintiff's functional limitations. (R. at 874, 875, 876, 880.) The most descriptive letter states that Plaintiff's inability to work is "due to chronic pain and nerve damage due to stroke." (*Id*. at 880.) But without greater elaboration, substantial evidence supports the ALJ's discounting Dr. Willis's opinions based on their vagueness.

. . . .

Accordingly, substantial evidence supports the ALJ's calculation of Plaintiff's RFC. Further, the ALJ appropriately rejected Dr. Willis's opinions based on their vagueness and correctly incorporated Dr. Allison's opined-to limitations into Plaintiff's RFC.

**B.    Further proceedings are required for the ALJ to determine which jobs Plaintiff can perform and whether they exist in a significant number in the national economy.**

Plaintiff argues that Defendant did not meet his burden to establish that Plaintiff can perform substantial gainful employment that exists in significant numbers in the national economy. (Pl. Br. 20–23.) Plaintiff further argues that Defendant *cannot* meet his burden even if Plaintiff could perform the jobs the ALJ found she can perform—Usher and Investigator—because those jobs do not exist in a significant number (11,800) in the national economy. (*Id*.) Alternatively, Plaintiff argues that there is a conflict between Plaintiff's limitation to simple, repetitive tasks and the required "Reasoning Level" of the Investigator job such that she cannot perform it. (*Id*. at 22–23.) Therefore, Plaintiff argues that she can only perform the Usher job, and since there are only 5,300 such jobs in the national economy, she cannot perform work that exists in significant numbers in the national economy. (*Id*.)

The Court agrees that Defendant did not meet his burden to establish that Plaintiff can perform substantial gainful employment that exists in significant numbers in the national economy. However, the Court disagrees that Defendant cannot meet his burden— it is ambiguous whether he can. Thus, the appropriate remedy is to remand Plaintiff's case for further proceedings. Taking Plaintiff's arguments in order, if Plaintiff can perform the Investigator job, then it is possible that Plaintiff can perform jobs that exist in significant numbers in the national economy. However, because it is ambiguous whether Plaintiff can actually perform that job, further proceedings are required.

. . . .

. . . .

. . . .

### 1. If Plaintiff can perform the Investigator job then she may be able to perform jobs that exist in significant numbers in the national economy.

Once a claimant establishes that she cannot perform her past relevant work, it is the Commissioner's duty to establish that she can perform substantial gainful employment that exists in significant numbers in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.966. Though there is not a bright-line for determining whether employment exists in significant numbers in the national economy, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in [significant numbers in] the national economy." 20 C.F.R. § 416.966(b) (italics removed). The Ninth Circuit has declined to find that there is a bright-line determining the total number of jobs that is significant. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (finding 25,000 national jobs significant). In *Gutierrez*, the Ninth Circuit found that 25,000 jobs was a "close call". *Id*. at 529. District Courts in the Ninth Circuit have varied in their conclusions. *Compare, e.g.*, *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (finding 12,300 national jobs significant) *and Evans v. Colvin*, No. ED CV 13-01500, 2014 WL 3845046, at *2–3 (C.D. Cal. Aug. 4, 2014) (finding 6,200 national jobs significant) *with Baker v. Comm'r of Soc. Sec.*, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (finding 14,500 national jobs insignificant) *and Valencia v. Astrue*, No. C 11-06223, 2013 WL 1209353 at *18 (N.D. Cal. Mar. 25, 2013) (finding 14,082 national jobs insignificant).

If Plaintiff can perform the Investigator job, then the ALJ could permissibly find that she can perform work that exists in significant numbers in the national economy. The total number of jobs Plaintiff could perform (11,800) would fall within the range of discretion afforded to ALJs in determining whether work exists in significant numbers. The cases cited above demonstrate the discretion ALJ's have in evaluating these close cases. The waters are further muddied (or perhaps clarified) by the VE's testimony that Plaintiff could also perform the job of Callout Operator if she were limited to sedentary work. (R.

at 79.) According to the VE, there are 5,900 such jobs in the national economy, so if Plaintiff could perform that job then that total would be added to the other jobs she can perform. (*Id.*) Presumably, Plaintiff could also perform this job since the ALJ found she can perform more than sedentary work, provided she meets the other functional requirements (though it is not entirely clear that she does meet the other functional requirements as discussed in the next section). (*Id.* at 36.) If Plaintiff can perform 17,700 jobs (Usher, Investigator, and Callout Operator) that exist in the national economy, the Court cannot confidently state that the ALJ would err by finding that total constitutes a significant number of jobs in the national economy.

Of course, if Plaintiff could perform only the Usher job, then its 5,300 jobs in the national economy would not constitute a significant number. Nevertheless, there is ambiguity about whether Usher is, in fact, the only job that she can perform. Without a clear determination of what jobs Plaintiff can perform, the Court cannot determine whether there is a significant number of jobs that Plaintiff can perform in the national economy.

> **2. Plaintiff's case must be remanded for a new hearing because there is ambiguity about whether she can perform the jobs of Investigator and Callout Operator.**

Plaintiff argues that she cannot perform the jobs of Investigator and Callout Operator because the ALJ limited her to simple, repetitive tasks and these jobs require reasoning inconsistent with her limitations. (Pl. Br. at 23; Reply at 4.) Plaintiff bases her argument on *Zavalin v. Colvin*, 778 F.3d 842, 846–47 (9th Cir. 2015), where the Ninth Circuit held that there is an apparent conflict between the functional abilities of claimants limited to simple, routine, or repetitive tasks, and the demands of jobs requiring "Level 3 Reasoning."[4] These reasoning levels refer to the reasoning abilities required of workers in representative jobs contained in the Dictionary of Occupational Titles (DOT). Dictionary

---

[4] Level 3 Reasoning requires a worker to: [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations. Dictionary of Occupational Titles, Fourth Edition, Revised, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, (1991) WL 688702.

of Occupational Titles, Fourth Edition, Revised, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, (1991) WL 688702.

Since *Zavalin* held that there is an apparent conflict between the ability to perform only simple, repetitive tasks and jobs requiring Level 3 reasoning, Plaintiff argues that there is, in fact, a conflict between her limitation to simple, repetitive tasks and the Investigator job, which requires Level 4 reasoning.[5] (Pl. Br. at 23.) She also argues that since Callout Operator is a job requiring Level 3 reasoning, *Zavalin* establishes she cannot do that job either. (Reply at 4.)

The Court rejects Plaintiff's arguments because she misreads *Zavalin*. The Ninth Circuit in *Zavalin* did not hold that there *is* a conflict between a claimant's ability to perform only simple, repetitive tasks and jobs requiring Level 3 reasoning. *Zavalin*, 778 F.3d at 846–47. Instead, *Zavalin* held only that there was an *apparent* conflict between Zavalin's limitation to simple, repetitive tasks and the requirements of Level 3 Reasoning jobs. *Id*. at 847 ("In sum, because the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning. We conclude that the ALJ erred in failing to reconcile this apparent conflict."). Accordingly, the court held that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." (*Id*.) Because there was ambiguity about whether Zavalin could perform jobs which require Level 3 reasoning given his limitations, the court determined that a new hearing was necessary. (*Id*.)

. . . .

---

[5] Level 4 Reasoning requires a worker to: [a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. (Examples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation.) Dictionary of Occupational Titles, Fourth Edition, Revised, APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, (1991) WL 688702.

Here, the same ambiguity exists. It is unclear whether Plaintiff can perform the job of Investigator which requires Level 4 reasoning. Since the reasoning level required is even greater than what was required by the Level 3 jobs at issue in *Zavalin*, the Court speculates that Plaintiff cannot perform the Investigator job. Nevertheless, that is a factual determination reserved to the ALJ. Even if the Court found that Plaintiff cannot perform the Investigator job because of its reasoning level requirement, it would remain ambiguous whether she can perform the Callout Operator job since it requires only Level 3 reasoning. Perhaps Plaintiff cannot perform the Investigator job but can perform the Callout Operator job. That is for the ALJ to determine by questioning the VE. *See Zavalin*, 778 F.3d at 846 ("The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence."). Further, if Plaintiff can perform the Callout Operator job and the Usher job, which requires only Level 2 reasoning, then there may be jobs that exist in a significant number in the national economy that she can perform. Ultimately, these are outstanding questions for the ALJ to answer.

In sum, since there is apparent conflict between Plaintiff's functional limitations and the reasoning requirements of the Investigator and Callout Operator jobs, further proceedings are necessary. Given these ambiguities, the Court cannot determine whether Plaintiff can perform either position or whether substantial evidence supports the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy.

## IV.   CONCLUSION

Though substantial evidence supports the ALJ's calculation of Plaintiff's RFC, substantial evidence does not support the ALJ's nondisability determination. Since there remains an apparent conflict between Plaintiff's functional limitations and the reasoning requirements of the jobs the ALJ and VE found she can perform, further proceedings are necessary. A new hearing is required to determine which jobs Plaintiff can perform and whether those jobs exist in significant numbers in the national economy.

**IT IS THEREFORE ORDERED** reversing the November 28, 2018 decision of the Administrative Law Judge (R. at 27–47.), as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 9th day of November, 2020.

Honorable Diane J. Humetewa
United States District Judge